

Shawn Michael Martin
OSP
2605 State St.
Salem, OR. 97310

United States District Court
District of Oregon
Eugene Division

| | |
|---|---|
| Shawn Michael Martin<br>Plaintiff(s)<br><br>v.<br><br>Dewsnup, et, al.<br><br>Dr. Dewsnup Oregon State Penitentiary (OSP), Garth Gulick M.D. Snake River Correctional Institution (SRCI), Jane Doe #1, (SRCI) John Doe #1 (SRCI), Estrada (SRCI), John Doe #2 (SRCI), John Doe #3 (SRCI), John Doe #4, (SRCI) Jane Doe #2 (SRCI), Jane Doe #5 (SRCI), John Doe #5 (SRCI), John Doe #6 (SRCI), S. Palmer (SRCI), Mark Nooth (SRCI), S. Jennings (SRCI), Michael S. Payne (SRCI), Mr. Franks (SRCI), Ted Randall (OSP), Dr. Steve Shelton, M.D. (OSP), Dr. Vargo (OSP), Dr.Hansen, (OSP) Dr. Degner (OSP), JaneDoe #6 (OSP), Jane Doe #7 (OSP), Jane Doe #8 (OSP), John Doe #10 (OSP), Mr.Jones (SRCI),Travis J. Hays (OSP), Seargeant Harris (OSP), Jason Hanson (OSP), Sergeant Hazen (SRCI), Lt. Parker-Kent | Case No. 6:11-cv-6420-HU<br><br>CIVIL RIGHTS<br>COMPLAINT<br>42 USC § 1983<br>(AMENDED)<br>JURY TRIAL<br>DEMANDED |

(OSP), Lieutenant J. Etter (OSP),
Foster (OSP), Corporal Harbaugh (OSP),
Julie Story (OSP), Peterson (OSP),
Yancey (OSP), Corporal Rose (OSP),
Hale (OSP), R.Rogers (OSP), Jane Doe #9
(OSP), John Doe #11 (OSP), Sabrina
(Nurse OSP), Irene (Nurse OSP),
Sgt. Oberfoell (OSP), Smith (OSP),
Michael Puerini,Oregon Department
Of Corrections (ODOC), Robert
Snider (ODOC), Bev Smith (ODOC),
Elizabeth Sazie (ODOC), Shawn
Elliot (ODOC), Sergeant Phillippi (OSP),
Sergeant Garber (OSP), Sergeant Gore
(OSP), Sergeant Shasteen (OSP), Jeff
Premo (OSP), Cruz (OSP), Pries (OSP),
Freeman (OSP), Mrs.Reding (OSP),
                                    Defendant,(s)

All in their individual and official capacit-)
ies acting under Color of State Law, for
Their actions and/or in-actions.

## I.    Introduction

1)    This is a verified civil rights complaint for compensatory, nominal and

punitive damages, for defendants violations of plaintiffs rights under the First,

Eighth and Fourteenth Amendments of the United States Constitution, and article I,

section 16 of the Oregon Constitution, as well as Oregon Revised Statutes Laws,

and Oregon Department of Corrections Administrative Rules, policies and

procedures. The violations giving rise to this complaint involve Retaliation,

Deliberate Indifference to plaintiffs serious medical needs, reckless disregard for

plaintiffs rights and serious medical needs, Due Process of Law , and Cruel and Unusual Punishment.

## II.    Jurisdiction

2)  This court has jurisdiction pursuant to 42 USC § 1983, 28 USC § § 1331 and 1343. As a federal question arises under the United States Constitution. Additionally, Nominal, Compensatory, and Punitive damages are requested for the violations of plaintiffs rights.

3)  Venue is appropriate in this court under 28 USC § 1391 since substantial events giving rise to this complaint occurred in this district.

4)  Pursuant to the requirements of the Prisoners Litigation Reform Act, 42USC § 1997, all available remedies have been exhausted through Oregon Department of Corrections, Department of Administrative Services and Grievance Review System, prior to this complaint being filed.

## III.    Parties

5)  Plaintiff, Shawn Michael Martin, is an inmate in the Oregon Department of Corrections, under a sentence imposed by the state of Oregon. Plaintiff is currently incarcerated at the Oregon State Penitentiary in Salem, Oregon. In this complaint the questions that give rise to the complaint occurred while plaintiff was incarcerated at the Snake River Correctional Institution in Ontario,Oregon and the Oregon State Penitentiary.

6) Defendant Dr. Daniel Dewsnup is an Infectious Disease specialist under contract by the Oregon State Penitentiary.

Defendant Garth Gulick is a doctor at SRCI.

Defendant Mr. Franks is a guard at SRCI.

Defendant Sergeant Hazen is a Sergeant at SRCI.

Defendant S. Jennings is a guard at SRCI.

Defendant Estrada is a guard at SRCI.

Defendant S. Palmer is a guard at SRCI.

Defendant Michael S. Payne is a guard at SRCI.

Defendant Mark Nooth is the Warden at SRCI.

Defendant Ted Randall was the Health Services Manager at OSP.

Dr. Steve Shelton is/was the Medical Director at OSP.

Defendant Travis Hays is a guard at OSP.

Defendant Dr. John Vargo is a doctor at OSP, as well as the Chief Medical Officer (CMO).

Defendant Freeman is a Sergeant at OSP.

Defendant Dr. Hansen is a doctor at OSP.

Defendant Dr. Degner is a doctor at OSP.

Defendant, Parker-Kent is a Lieutenant at OSP.

Defendant Harris is a Sergeant at OSP.

CIVIL RIGHTS COMPLAINT – U.S.C. 42 1983

Defendant Mr. Jones is a guard at SRCI.

Defendant Jane Doe #1 is a nurse at SRCI.

Defendant Jane Doe #2 works in the mailroom at OSP.

Defendant Jane Doe #5 is a guard at SRCI.

Defendant Jane Doe #6 is a nurse at OSP.

Defendant Jane Doe #7 is a nurse at OSP.

Defendant Jane Doe #8 is a nurse at OSP.

Defendant John Doe #1 is a guard at SRCI.

Defendant John Doe #2 is a guard at SRCI.

Defendant John Doe #3 is a guard at SRCI.

Defendant John Doe #4 is a guard at SRCI.

Defendant John Doe #5 is a guard at SRCI.

Defendant John Doe #6 works in the mailroom at OSP.

Defendant John Doe #10 is a guard at OSP.

Defendant J. Etter is a Lieutenant at OSP.

Defendant Foster is a guard at OSP.

Defendant Harbaugh is a corporal at OSP.

Defendant Julie Story is a member of the medical staff at OSP.

Defendant Peterson is a guard at OSP.

Defendant Yancey is a lieutenant at OSP.

Defendant Rose is a corporal at OSP.

Defendant Hale is a guard at OSP.

Defendant Reding is a guard at OSP.

Defendant Jane Doe #9 works in the mailroom at OSP.

Defendant John Doe #11 works in the mailroom at OSP.

Defendant Sabrina is a member of the medical staff at OSP.

Defendant Irene is a member of the medical staff at OSP.

Defendant Oberfoell is a sergeant at OSP.

Defendant Smith is a guard at OSP.

Defendant Phillippi is a sergeant at OSP.

Defendant Garber is a sergeant at OSP.

Defendant Gore is a Sergeant at OSP.

Defendant Shasteen is a Sergeant at OSP.

Defendant R. Rogers is a Corporal at OSP.

Defendant Cruz is a guard at OSP.

Defendant Jason Hanson is the Grievance Coordinator at OSP.

Defendant Jeff Premo is the Warden at OSP.

Michael Puerini is a M.D. employed within the ODOC.

 Defendant Robert Snider was on the TLC Committee on 1-12-12.

Defendant Bev Smith is an FNP employed within the ODOC.

Defendant Elizabeth Sazie is a M.D. employed within the ODOC.

Defendant Shawn Elliot is a Nurse Practitioner employed within the ODOC.

7) All of the defendants are being sued in their individual and official capacity,

for their actions and/or in-actions. Acting under color of state law, for their

failure to provide adequate and necessary medical treatment, for their reckless

disregard to plaintiffs serious medical needs, for their deliberate indifference to

plaintiffs serious medical needs, retaliation, for intentional and deliberate

infliction of pain, knowingly violating plaintiffs statutory and constitutional

rights, protected by state laws and the State and Federal Constitutions.

## IV.     Summary of allegations

8) Plaintiff brings this action due to SRCI prison officials reckless disregard and

deliberate indifference to plaintiffs serious medical needs, subjecting plaintiff to

cruel and unusual punishment as a result of denying plaintiff prompt, adequate

and necessary medical attention to prevent further suffering by plaintiff. Plaintiff

also alleges a due process violation as a result of being denied proper medical

attention. SRCI and OSP prison officials also used excessive force, causing

serious bodily harm to plaintiff. Plaintiff further alleges retaliation by SRCI

guards and medical personnel. There's three (3) claims, claims 1 & 2 against

SRCI officials, Claim 3 against OSP officials. Plaintiff further alleges retaliation

by guards and medical personnel at OSP, as well as excessive force by guards,

deprivation of basic human necessities by SRCI officials as well as OSP officials, deprivation by SRCI and OSP officials of medication needed to prevent a slow, agonizing painful death. Medication withheld as retaliation, and proper medical attention denied to stop excruciating, sometimes debilitating pain.

## V.   Claim I
## (Snake River Correctional Institution)

9) Deliberate indifference; reckless disregard; intentional infliction of pain; retaliation; misapplication of ODOC Administrative Rule; gross negligence; serious medical needs; condition deprivation of medication; mental, emotional, and physical pain and suffering, as well as a violation of due process.

10) On defendants : (Gulick; is a doctor at SRCI, Jane Doe #1; is a nurse at SRCI in charge of obtaining medical records requested.

### Facts :

10) From around April of 2008, until October 2010, plaintiff was housed at SRCI.

### (Gulick)

11) Plaintiff suffers from a disease called; Hepatitis C 4th stage (cirrhosis of the liver). Plaintiff has had 4th Stage Hepatitis C (cirrhosis) since September 2003.

12) On April 29, 2008 until October of 2010, plaintiff requested that Dr. Gulick

prescribe Interferon and Ribavirin to treat plaintiff for Hepatitis C 4th stage.

Defendant asked plaintiff how he knew he had Hep. C 4th stage. Plaintiff

informed defendant of a liver biopsy performed on plaintiff in 2003. Defendant

had plaintiff sign a medical release form so defendant could have a copy of the

2003 liver biopsy forwarded to SRCI where defendant is/was employed.

Defendant then looked at the bloodwork performed on April 23, 2008 and he

attempted to persuade plaintiff into believing that plaintiff did not have cirrhosis.

Defendant circled the platelet count and stated that plaintiffs platelet count was

good. Defendant looked at paperwork in plaintiffs medical file that stated

plaintiff had been treated with the less effective 3 times a week interferon shot in

2003- 2004. Plaintiff asked to be treated with the much improved once a week

shot. Defendant refused to even consider plaintiffs request. Defendant stated that

he needed to get plaintiffs medical file from Illinois. Defendant then began

explaining that there were gonna be, "new drugs"available that were being used

in Europe "in the near future".

13) On July 3, 2008, plaintiff was examined by defendant. On this date, plaintiff

asked defendant if he had received a copy of plaintiffs medical record from

Illinois, containing a copy of the liver biopsy performed on plaintiff in 2003.

Defendant said no he had not. Plaintiff then signed another medical release of

information form. From July 3, 2008 until March 17 , 2009, the plaintiff , each

time he seen defendant , inquired as to whether plaintiffs medical record had been

retrieved. Each time defendant said no. Plaintiff also asked about the "new drugs

that were being used in Europe".

14) On March 17, 2009 plaintiff signed another medical release of information

form to give permission to SRCI medical personnel an opportunity to obtain

plaintiffs medical file from Illinois, with a copy of the September 2003 liver

biopsy results. Plaintiff also requested that defendant schedule plaintiff to have a

liver biopsy performed on him. Plaintiff also requested to be placed on the

Interferon and Ribavirin medication. Defendant refused both requests. Plaintiff

asked what the reason was for the "new drugs" being delayed, for use in the

United States. Defendant stated "the FDA is dragging their feet". Defendant

began looking at the results of prior bloodwork that had been done on plaintiff.

Defendant again tried to convince plaintiff that he didn't have cirrhosis. Plaintiff

stated that he did have cirrhosis.

15) On July 28, 2009, plaintiff signed another medical release form. Plaintiff

asked to be given the Interferon and Ribavirin treatment. Defendant refused to

give plaintiff treatment. Plaintiff asked for a liver biopsy. Defendant denied

plaintiffs request.

16) On September 16, 2009 plaintiff requested a liver biopsy. Defendant also denied this request. Plaintiff asked if the "new drugs being used in Europe" were available. Defendant replied "not yet". Plaintiff asked for the Interferon and Ribavirin treatment defendant again denied plaintiffs request.

17) On December 2, 2009 plaintiff signed another release of medical information form. Plaintiff again requested a liver biopsy and treatment for Hepatitis C. Defendant refused both requests.

18) From April 2008 to October 2010, plaintiff repeatedly asked for a liver biopsy and treatment for Hepatitis C 4th stage (cirrhosis). Defendant, Dr. Gulick, refused each request.

### (Jane Doe #1)

19) Jane Doe #1 failed to obtain a copy of the liver biopsy performed on plaintiff on September 15, 2003. From April 29, 2008 until October 2010, defendant was given at least six mediccal release of information forms with plaintiffs signature on them. Defendants failure to obtain medical record enabled defendant, Dr. Gulick, to delay and ultimately deny plaintiff medication to help prevent plaintiff from further declining health and further pain and suffering.

20) As a result of the actions and/or in-action of Gulick, and Jane Doe #1, plaintiffs constitutional rights were violated. Plaintiff has been subjected to deprivation of medication, knowingly, deliberately, and maliciously. Plaintiff has

been subjected to cruel and unusual punishment. As well as plaintiffs due process rights have been violated by Gulick and Jane Doe #1. They violated plaintiffs rights under Administrative Rules, Oregon Laws and the Federal Constitution. Plaintiff claims his 8th Amendment Rights were violaed by defendants Gulick and Jane Doe #1. They also violated the Anstett et al v. State of Oregon USDC case no. 01- 1619 BR settlement agreement. Damages are appropriate for these claims.

V.          **Claim**

## (Snake River Correctional Institution)

(21) Deliberate Indifference; Reckless Disregard; Intentional Infliction of Pain; Deprivation of Medication; Retaliation; malicious intent to cause excruciating pain and suffering ; mental, emotional, pain and suffering; distress and anxiety.

## Totality of Circumstances

22) On defendants: Gulick, Palmer, Mr. Franks, Jones, S. Jennings, Estrada,and S. Payne.

23) Plaintiff asks the court to allow him to submit claims against Gulick, Palmer, Mr. Franks, Jones, S. Jennings, Estrada and S.Payne as a claim of retaliation, deprivation of basic human necessities, and cruel and unusual punishment. Plaintiff asks the court to look at the claims against these defendants under totality of circumstances. While each claim made against these defendants does not give rise to an Eighth Amendment violation. When the events that took place

surrounding these claims are looked at together in a vaccum and the timetable for

which these events unfolded, given how close together the events supporting

these claims took place, one would have to give serious consideration as to the

claim of retaliation. That in conjunction with the guards involved in this claim

being friends of one another should suffice in supporting plaintiffs claim of

retaliation. The court should not dismiss these claims.

### Facts:

24) Plaintiff was denied food on six different occasions. The dates and names are

as follows: on 5-20-08, plaintiff was denied breakfast by the guard stationed at

segregation intake. On 5-24-08, plaintiff was denied lunch meal by the guard

Kaust. On 5-19-09, plaintiff was denied evening meal by the female guard Feist.

On 6-30-10, plaintiff was denied evening meal by the guard Estrada. On 7-6-10,

plaintiff was denied lunch meal by the male guard Franks. Around September,

2010, Dr. Gulick cancelled plaintiffs sack lunch after a medical procedure.

Guards as well as medical personnel used food as punishment. Using food as

punishment is highly illegal. Plaintiff will prove at trial defendants did use food

as punishment, as well as for retaliation purposes.

### (Estrada)

25) On 6-30-10, Plaintiff was denied his evening meal by Estrada. Plaintiff was

denied basic human necessities as a result of defendants action. While being

denied one meal does not rise to the level of cruel and unusual punishment, being

denied food several times does in fact rise to a claim of cruel and unusual

punishment, retaliation, and denial of basic human necessities. Plaintiff was

denied food on six separate occasions by different guards and medical personnel

while at SRCI. Plaintiff is going to show a pattern of denial of basic human

necessities at trial. Defendant acted in a concerted effort to retaliate against

plaintiff as well as deny plaintiff basic human necessities. Plaintiff brings this

claim under totality of circumstances.

## (Franks)

26) On 7-6-10, plaintiff was denied his lunch tray. This was the second time in a

one week period of time that plaintiff was denied food. Plaintiff makes the claim

of cruel and unusual punishment, deprivation of basic human necessities, and

retaliation. The denial of food led up to plaintiff being beaten by guards on 7-6-

10. While being denied food one time does not rise to the level of a civil rights

violation, being denied food six times surely does. The intent to deprive is

evident. Franks failure to properly feed plaintiff was to get a provocation out of

plaintiff so guards could beat him.

## (Jones)

27) On 7-6-10, plaintiff was severly injured by the guard Mr. Jones while laying

facedown on the floor, offering no resistance. Plaintiff layed facedown on the

floor with outstretched arms to allow guards to come in and place plaintiff in

handcuffs. Mr. Jones repeatedly beat on plaintiffs left leg causing serious bodily

injury. Resulting in excruciating

pain. Pain in plaintiffs leg still exists. Defendant used excessive force. Defendant

also used retaliation tactics on plaintiff.

### (Palmer)

28) On 7-13-10, the guard Mr. Palmer denied Plaintiff medical attention.

Defendant wanted plaintiff to stand on one leg and lift the other leg while

defendant secured leg shackles. Plaintiff informed defendant that plaintiff could

not stand on plaintiffs left leg due to the severity of the injury to his leg.

Defendant then whipped the plaintiff around almost knocking the plaintiff to the

ground. Defendant was required to apply leg restraints in plaintiffs cell prior to

removing plaintiff from cell. Defendant did not do that. Defendant walked

plaintiff out of the unit he was housed in to the corridor without shackles. Palmer

is in violation of plaintiffs due process rights by denying plaintiff medical

attention. Defendant was deliberately indifferent to plaintiffs serious medical

needs. Plaintiff submitted a grievance on defendant for his refusal to take plaintiff

to see the doctor. Defendant falsely claimed that plaintiff was refusing to see the

doctor in an attempt to cover up the injuries plaintiff sustained from being beat by

the guard Jones.  Plaintiff makes a claim of retaliation for using the grievance

procedure. Plaintiff further claims that he was retaliated against by Palmer for
submitting grievances on him, his friends and co-workers Franks, and S.Jennings.
Palmer made inappropriate comments to plaintiff. Defendant also denied plaintiff
basic human necessities.

29) On 7-24-10, defendant denied plaintiff a shower.

30) On 8-9-10, defendant banged on window of the cell plaintiff was "housed"
in to provoke and antagonize plaintiff. Defendant informed other prisoners that
plaintiff wrote grievances by yelling "what, so you can write another grievance
on me?" Writing grievances is considered as "snitching" by prisoners.
Defendants comment was made to make plaintiff look like a snitch in the eyes of
prisoners. After defendants comment, prisoners began yelling rat, snitch, and
profanities at plaintiff. Defendants comment was made in an attempt to dissuade
plaintiff from using grievance procedure. Furthermore, defendants comment
placed plaintiff at risk for being attacked by other prisoners, upon plaintiffs
release from segregation. Defendant also made the comment, "how's your leg
feel"? defendant made this comment after knowing plaintiff was severely injured
by guards on 7-6-10. While one incident does not give rise to an Eighth
Amendment violation, the circumstances for which this claim is brought, along
with the timing of events surrounding the incidents supporting plaintiffs claim
against defendant, when looked at in a vaccum, does give rise to an Eighth

Amendment violation for deprivation of basic human necessities, retaliation, and cruel and unusual punishment. Plaintiff did not have any problems with defendant until plaintiff submitted a grievance on defendant as well as defendants friends and co-workers Mr. Franks and S. Jennings. Defendant is friends with defendants Franks and S. Jennings. Plaintiff brings an First Amendment claim against defendant as well. Plaintiff introduces thes claims to the court under totality of circumstances.

### (Gulick)

31) On 7-13-10, Dr. Gulick denied plaintiff medical attention for injury to plaintiffs left leg. After Plaintiff was taken back to the cell where plaintiff was housed by Palmer, plaintiff seen the nurse Jane Doe. Plaintiff showed Jane Doe his injured leg. Jane Doe said "you need to see the doctor, you could get a blood clot and it can go to your heart and kill you". Plaintiff then told Jane Doe that he was not refusing to see the doctor, and that Palmer was not being truthful by saying that plaintiff was refusing to see the doctor. Jane Doe said that plaintiff needed to cooperate and see the doctor because plaintiff may need blood thinners. Jane Doe then went and informed the defendant of the severity of the injury to plaintiffs left leg. Defendant, Gulick, said that plaintiff had refused to see him by

plaintiffs actions with Palmer. Plaintiff introduces these claims under totality of
circumstances.

32) Shortly after an incident where plaintiff was assaulted by the guard Payne on
9-19-10, Gulick cancelled plaintiffs sack lunches that plaintiff had been receiving
for years on a regular basis, after plaintiff had a medical procedure performed
called: a phlebotomy. That procedure entails taking a pint of plaintiffs blood from
plaintiffs body intraveneously. Defendant stated "that if lunch was served right
after the phlebotomy that the plaintiff didn't need a sack lunch", to replenish
nutrients lost through the phlebotomy, to prevent fainting and possible injury.
Lunch was rarely served "right after" any phlebotomy plaintiff had undergone.
For years on the streets, as well as in prison , plaintiff, per the person performing
the phlebotomy, was ordered to eat and drink before and after the phlebotomy.
Defendant denied or attempted to deny plaintiff a sack lunch to retaliate due to an
altercation with the guard Payne. Plaintiff was receiving a sack lunch or a snack
after each phlebotomy was performed while he was a citizen in society before he
was incarcerated. Plaintiff was given snacks while he was housed at Coffee
Creek, Men's Receiving, after each phlebotomy. Plaintiff was also given a sack
lunch the entire time he was housed at SRCI after each phlebotomy, until soon
after the assault by the guard Payne. Plaintiff was assaulted after plaintiff had a
disagreement with Payne as to how the sack lunch would be consumed by

plaintiff. The only thing that changed in regards to the sack lunch was after

plaintiff was assaulted by the guard Payne. It was harmful retaliation by Gulick

when he cancelled plaintiffs sack lunches. The purpose for the sack lunch was to

replenish nutrients lost from the phlebotomy. Defendant was deliberately

indifferent to plaintiffs serious medical needs. Gulick caused intentional infliction

of emotional distress  and anxiety as plaintiff was in fear of being injured due to

defendant cancelling plaintiffs sack lunch. Defendants action was extremely

harmful to plaintiffs health and well being due to the advanced stage of  the

Hepatitis C virus for which plaintiff is afflicted with. Stress can cause more

damage to the liver.Gulick purposely retaliated for the altercation with Payne by

not allowing plaintiff sack lunch.

33) From 7-20-10 to 10-20-10, plaintiff told Gulick that the pain medication

defendant prescribed for plaintiffs injured left leg was ineffective. Defendant

prescribed other medication that was ineffective as well. Plaintiff informed

defendant that the medication he prescribed was not working to alleviate the pain.

Defendant stated "take Ibuprofen". Defendant was deliberately causing plaintiff

to remain in pain.

### (S. Jennings)

34) On 8-6-10, When S. Jennings walked by the cell that plaintiff was "housed"

in, defendant looked at the window of the cell and seen that plaintiff was

scheduled to receive a paper tray for meals as punishment for a false accusation

made by another guard at SRCI. Defendant then states "ah, paper tray". When

plaintiff received the paper tray from defendant, defendant states if there is any

paperwork it is S. Jennings. When defendant removed the top tray , plaintiffs

food had been shaken up. The food was a pile of slop. When defendant returned

to collect the tray he stated to plaintiff "how's the leg"? Defendant knew plaintiff

was injured by guards on 7-6-10. That comment was cruel. On 8-14-10 S.

Jennings passed out lunch trays and asked plaintiff "hows it going ?, enjoy your

food". Plaintiff did not reply as defendant had a mocking tone to his voice. When

defendant collected the tray from plaintiff after the meal, defendant asked

plaintiff "how's the leg ?, officer Palmer says hi". Plaintiff continued to ignore

defendant. Defendant was  not asking plaintiff about plaintiffs leg injury because

he was concerned, defendant was taunting plaintiff trying to provoke and

antagonize plaintiff. Defendant is a friend of the guard Palmer. S.Jennings and

Palmer were retaliating against plaintiff for using the grievance procedure

because plaintiff had submitted grievances on both defendants. While one

incident does not give rise to an First or Eighth Amendment violation. Several

different instances where plaintiff was subjected to mental, emotional and

physical abuse, when looked at in a vaccum  together, in this instance gives rise

to a First and Eighth Amendment violation. Defendant used tactics to retaliate on

plaintiff for using the grievance procedure. Defendant was also trying to illicit a

response from plaintiff that would be conducive to create a situation where

guards would have to use force to remove plaintiff from cell. As well as

defendant writing a disciplinary report on plaintiff so as to allow the hearings

officer to impose sanctions and fines upon plaintiff. When defendant asked

plaintiff "how's the leg ?", his intention was to ridicule, provoke, and incense

plaintiff. For these reasons plaintiff brings a First, Eighth and Fourteenth

Amendment claim against S. Jennings. Defendant was trying to dissuade plaintiff

from using the grievance procedure in the future. Defendant was retaliating

because plaintiff wrote grievances on him and his co-worker and friend Palmer.

Plaintiff introduces this claim to the court under totality of circumstances.

## (Payne)

35) On 9-19-10, Payne used excessive force on plaintiff. Payne grabbed plaintiff

by the throat. Plaintiff had a disagreement with defendant about how plaintiff

would consume his sack lunch. Defendant choked and then slammed plaintiffs

head into the wall while plaintiff was in full restraints. Plaintiffs hands and feet

were cuffed. Defendant then submitted a false disciplinary report on plaintiff in

an effort to cover-up his abuse. Defendant claimed plaintiff assaulted defendant

while plaintiff was being fully restrained, hands and feet. The disciplinary report

was dismissed for obvious reasons. Plaintiff had headaches and a sore throat due

to defendants use of excessive force. Plaintiff was in fear for his life. Plaintiff claims he was physically abused, causing physical pain as well as mental and emotional distress. Plaintiff claims that defendndant retaliated on plaintiff because plaintiff wrote grievances on his friend and co-workers. Plaintiff was escorted to a medical procedure by a single guard, John Doe. When the procedure was complete John Doe began to escort plaintiff back to where plaintiff was "housed". When defendant seen who John Doe was escorting, defendant joined John Doe and began escorting plaintiff so he could retaliate on plaintiff.Plaintiff introduces these claims to the court under totality of circumstances.

36) On defendants: Hazen, Nooth, Jane Doe #2, Jane Doe #3, Jane Doe #4, Jane Doe #5 Jane Doe #6, John Doe #1, John Doe #2, John Doe #3, John Doe #4, John Doe #5 John Doe #6, John Doe #7, John Doe #8, John Doe #9, John Doe #10, plaintiff claims his 8th Amendment Rights were violated by these defendants.

## Facts:

### (Jane Doe #5 or John Doe #1)

37) On 7-6-10, plaintiff was shocked twice with a "shock shield," while plaintiff layed facedown on the floor, offering no resistance before the "extraction team"entered the cell that plaintiff was "housed in". Plaintiff layed facedown on the floor with outstretched arms to allow guards to handcuff plaintiff and remove him from the cell. When plaintiff layed on the floor, Jane or John Doe did not

need to shock plaintiff. Defendant used excessive force. Defendant subjected plaintiff to cruel and unusual punishment. Plaintiff does not know the name of the guard that used the "shock shield" to shock plaintiff. Plaintiff offered no resistance while being shocked. Defendant in this claim is Jane Doe #5 or John Doe #1.

### (Hazen)

38) On 7-6-10, Sergeant Hazen was the leader of the "extraction team," when plaintiff layed facedown on the floor. Defendant should not have allowed the plaintiff to be beat on or shocked by the shock shield. It was the defendants duty to prevent the abuse and/or stop it. He did neither, allowing plaintiff to be subjected to cruel and unusual punishment.

### (John Doe #2)

39) On 7-6-10, John Doe #2 held plaintiffs left hand on the floor while the guard Mr. Jones repeatedly beat on plaintiffs left leg. Defendant did not give plaintiffs hand to Mr. Jones when he repeatedly told plaintiff to "give me your hand". Defendant purposely and forcefully held plaintiffs hand on the floor preventing plaintiff from giving defendant, Mr. Jones, plaintiffs left hand.

### (John Doe #3)

40) On 7-6-10, John Doe #3 was holding the camera. He did not tell defendants to stop abusing plaintiff.

### (John Doe#4)

41) On 7-6-10, John Doe #4 held plaintiffs head down on the floor. Defendant did not ask the other defendants to stop abusing the plaintiff.

### (John Doe #5)

42) On 7-6-10, John Doe #5 held down plaintiffs right leg. He did not stop or try to prevent other defendants from abusing plaintiff.

### (Nooth)

43) Mark Nooth is the warden at SRCI. Plaintiff asked to be transferred repeatedly to prevent retaliation and abuse. Plaintiff asked for defendant to order guards to have a camera present when plaintiff was removed from cell, to dissuade guards from assaulting or abusing plaintiff. Defendant did not order a camera to be present, allowing guards to retaliate and abuse plaintiff. Defendant did not transfer plaintiff to another prison until plaintiff was assaulted by guards twice. Plaintiff was denied food on six occasions. Plaintiff suffered emotional, mental, and physical pain due to defendants failure to act when he was informed that abuse was indeed occuring. Plaintiff further alleges that defendant knew that some members of the extraction team that extracted plaintiff from the cell that

plaintiff was housed in on 7-6-10, had the propensity to use excessive force from prior cell extractions where prisoners were injured by violent, abusive guards.

### Claims:

44) Plaintiff claims Dr. Gulick violated plaintiffs  8th Amendment  Rights; Jane Doe #1 violated plaintiffs  8th Amendment Rights; Mr. Franks violated plaintifFs 1st, 8th, and 14th Amendment Rights;Mr. Jones violated plaintiffs 8th Amendment Rights; Jane Doe #5 or John Doe #1 violated  plaintiffs 8th Amendment Rights; Sergeant Hazen violated  plaintiffs 8th Amendment Rights; John Doe #2 violated plaintiffs 8th Amendment Rights; John Doe #3 violated plaintiffs 8th, Amendment Rights; John Doe #4 violated plaintiffs 8th, Amendment Rights; John Doe #5 violated plaintiffs 8th Amendment Rights; Palmer violated plaintiffs 8th , 1st, and 14th Amendment Rights; Estrada violated plaintiffs 8th Amendment Rights; S. Jennings violated plaintiffs 1st, 8th, and 14th Amendment Rights; Payne violated plaintiffs 8th Amendment Rights; Nooth violated plaintiffs  8th Amendment Rights.

45) As a result of the actions and/or in-action of Gulick, Jane Doe #1, Mr. Franks, Estrada, Mr. Jones, Jane  Doe #5, or John Doe #1, Hazen, John Doe #2, John Doe #3, John Doe #4, John Doe #5, Palmer, S. Jennings, Payne, Nooth, plaintiffs constitutional rights were violated. Plaintiff has been subjected to retaliation, deprived of medication, inflicted of pain, knowingly, deliberately, and

maliciously. Assault and battery occurred at the hands of Mr. Jones and Mr.

Payne. SRCI officials should be held liable for their actions and/or in-actions.

Plaintiff tried to resolve these claims through the Tort Claims Act Procedure,

which were denied. It appears SRCI, ODOC officials choose litigation over

reasoning. They violated plaintiffs rights under Administrative Rules, Oregon

Laws, and the State and Federal Constitution. Damages are appropriate for these

claims.

**VI.          Claim III (OSP)**

46) On defendants: Randall, Steve Shelton, Vargo, Dewsnup, Hansen, Degner,

Parker-Kent, Peterson, Jane Doe #6, Jane Doe #7, Jane Doe #8, Harris, Freeman,

Hanson, Hays, J. Etter, Gore, Phillippi, Shasteen, Yancey, Garber, R. Rogers,

Hale, Mrs. Reding, Pries, Mr. Foster, Oberfoell, Harbaugh, Julie Story, Rose,

Sabrina, Irene, Smith, Cruz, Michael Puerni, Robert Snyder, Bev Smith,

Elizabeth Sazie, and Shawn Elliot.

## Facts: (Vargo)

47) On 10-20-10, plaintiff was transferred to the Oregon State Penitentiary, in

Salem Oregon (OSP). Within a week plaintiff met with defendant John Vargo,

the Chief Medical Officer (CMO). Plaintiff informed defendant of plaintiffs need

as well as desire to be treated for Hepatitis C 4th stage (cirrhosis of the liver).

Plaintiff also let defendant know that he was suffering from pain in his left leg,

hip, and knee. Plaintiff let defendant know that the pain in plaintiffs left leg, hip,

and knee often made it hard to walk. Plaintiff asked to be given Interferon and

Ribavirin treatments for the Hepatitis C virus. Defendant referred plaintiff to see

the Infectious Disease Specialist, Dr. Dewsnup. Whithin a few weeks of Plaintiffs

arrival at OSP, he met with Dr. Dewsnup to discuss plaintiffs need for treatment.

Plaintiff explained how he was denied treatment by Dr. Gulick at SRCI, as well

as Dr. Gulicks failure to obtain plaintiffs medical file from Illinois. Plaintiff also

explained about Dr. Gulicks failure to have plaintiff scheduled to have a liver

biopsy performed. Dewsnup said he'd like to get a copy of my medical file from

Illinois. Plaintiff signed a medical release form and he asked defendant to

schedule him for a liver biopsy. Defendant refused plaintiffs request. Defendant

said he would meet with the Total Level of Care Committee (TLC), to discuss

treatment. The TLC Committee denied plaintiff treatment for Hepatitis C.

48) Defendant Vargo is the Chief Medical Officer (CMO) at OSP. He is also on

the TLC Committee. Defendant has never given or attempted to give plaintiff

medication for the pain plaintiff suffers from in plaintiffs left leg, knee, and hip.

Plaintiff has asked repeatedly for surgery as well as pain medication. Plaintiff

was seen by the Orthopaedic Specialist, Dr. Becker, on 1-24-12. Dr. Becker was

hired by the ODOC. Plaintiff was seen by Dr. Becker for pain in plaintiffs left leg,

knee and hip. Dr. Becker made the recommendation that the plaintiff be seen by

another specialist in downtown Salem. Defendant is the Chief Medical Officer

(CMO) at OSP. Defendant has not allowed plaintiff to be seen by a specialist

recommended by Dr. Becker. Defendant continues to deny plaintiff care for

plaintiffs injured leg. Defendant denied plaintiff treatment for Hepatitis C (4TH

stage) from approximately 10-27-10 to 6-1-11.

49) On 6-1-11, plaintiff was finally placed on the Interferon and Ribavirin

treatments for the Hepatitis C virus. Plaintiff was responding to the treatments.

Even though plaintiff was responding to treatment for Hepatitis C, defendant met

with the Infectious Disease Specialist in July of 2011. He decided along with the

other members of the TLC Committee and Dr. Dewsnup to take plaintiff off of

the Hepatitis C treatment.


On 4-17-12, plaintiff was seen by Vargo. On this date plaintiff asked defendant

why he was not being transported to have his leg looked at by the specialist in

downtown Salem, as ordered by the OrthoPaedic Speciallist Dr. Becker on 1-24-

12. Vargo stated that the TLC Committee said they would not allow the surgery

because Plaintiff had compensated cirrhosis of the liver.

### (Degner)

50) Dr. Degner is on the TLC Committee. He along with, Vargo, Hansen,

Dewsnup and whoever else is on the TLC Committee failed to treat plaintiff for

Hepatitis C from around 11-1-10 to 6-1-11 with much needed medication to prevent further suffering and possible death. Defendant also failed to prescribe pain medication for the pain plaintiff suffers from in his left knee, hip and leg.

### (Hansen)

51) Dr. Hansen is part of the medical staff at OSP. He is also on the TLC Committee. Defendant denied plaintiff Hepatitis C treatment from around 11-1-10 until June 1, 2011.

52) In October 2010, Hansen cancelled plaintiffs phlebotomies that plaintiff had been receiving regularly since 2005. Plaintiff had these procedures performed on him to lower the iron content in plaintiffs blood due to a hereditary disease called Hereditary Hemochromatosis. If regular phlebotomies are not performed on plaintiff, iron builds up in plaintiffs joints, muscles, testicles, and organs causing pain where the buildup occurs. The iron buildup can also cause organ failure. Plaintiff repeatedly asked for the phlebotomies to be resumed. Plaintiffs requests were denied. Hepatitis C thrives on iron. If iron levels are high in plaintiffs blood, it gives the Hepatitis C virus a greater, swifter path to destruction of the liver. Defendant did not resume phlebotomies until July of 2011. The delay to resume the procedure was way too long.

53) From 6-22-11, until 12-12-11, Plaintiff was housed in the Disciplinary Segregation Unit (DSU). Defendant repeatedly refused to refer plaintiff to see a

specialist concerning pain in plaintiffs left hip, knee, and leg. Plaintiff has also

been denied any pain medication as well, for pain in left leg by defendant. In July

of 2011 defendant made a recommendation that plaintiff be removed from the

Interferon and Ribavirin treatments that were successful in lowering the viral

load in plaintiffs blood due to the Hepatitis C virus.

54) While on Hepatitis C treatments, plaintiff lost 40 lbs., due to the medications,

interferon and ribavirin. Plaintiff repeatedly asked the defendant to order a sack

lunch for plaintiff to help stabilize plaintiffs weight loss. Defendant did not order

sack lunch until July 15, 2011, after numerous requests by plaintiff. Defendant

should of monitored plaintiffs weight more closely in an attempt to prevent the

significant amount of weight lost by plaintiff. Defendant made a recommendation

to Dewsnup to stop the Hep. C treatment plaintiff was receiving. Plaintiff was

removed from the treatment because plaintiff was incensed due to the abuse by

guards and the poor medical treatment.

### (Shelton)

55) Dr. Steve Shelton is the one in charge of supervising all Medical Doctors

within the Oregon Department of Corrections (ODOC). Defendant has allowed

the doctors at SRCI as well as OSP to act deliberately indifferent to plaintiffs

serious medical needs by denying plaintiff medication for Hepatitis C 4th stage.

Defendant has also allowed plaintiff to suffer due to the injury to plaintiffs left

leg, hip and knee, after knowing plaintiff has been complaining of pain in those areas for over sixteen months. Even after plaintiff was seen by Dr. Becker and referred to see a specialist on 1-24-12. Defendant has not seen that plaintiff receives the care  plaintiff obviously needs. Plaintiff is in pain sometimes when he walks. Plaintiff experiences pain when plaintiff walks up or down stairs all the time. Plaintiff can no longer run due to pain. Defendant also allowed Dr. Dewsnup as well as doctors from the TLC Committee to remove plaintiff from Hepatitis C medication. Defendant refused to answer any letters plaintiff sent to defendant.Defendant is deliberately indifferent to seriously needed medical attention for plaintiff. Defendant is a person being sued by plaintiff and he continues to answer plaintiffs grievance appeals.

### (Ted Randall)

56) From 10-20-10 until September 2011, Ted Randall was the Health Services Manager at OSP. Defendant was aware of plaintiffs need for treatment of Hepatitis C, 4th stage, at this time. Defendant was also aware of plaintiffs need to see a specialist in regards to the pain in plaintiffs left knee, hip, and leg. Plaintiff made it a known fact that he was in pain, sometimes excruciating pain in his left leg. Defendant allowed doctors at OSP to deny plaintiff proper medical attention as well as being denied sufficient pain medication that would be effective in

alleviating plaintiffs pain. Defendant acted with deliberate indifference to plaintiffs serious medical needs.

### (Freeman)

57) In February 2011, plaintiff was denied clean clothes on more than one occasion by Freeman. Plaintiff worked at OSP, washing pots and pans. Plaintiff was soaking wet each day when plaintiff was done working for the day. Plaintiff caught a cold that turned into a very serious sickness that required the plaintiff to be taken to a clinic outside the prison grounds. Defendant denied basic human necessities, causing plaintiff to become more susceptible to becoming ill.

### (Harris)

58) From October 2010 to June of 2011, plaintiff was denied clean clothes by Sergeant Harris. Defendant informed other guards at OSP not to give "extra" Clothes" to prisoners. Plaintiff informed defendant that plaintiff did not have enough clothes in plaintiffs cell to change into on the weekend after plaintiff finished working for the day. Defendant would allow clothes to be given to "industry workers", but not to prisoners who worked in the kitchen. Defendant was aware that plaintiff was soaking wet each day after work. Defendant offered plaintiff raingear to wear inside while washing pots and pans. If plaintiff wore raingear inside scrubbing pots and pans, plaintiff would have been soaked with sweat, making the raingear useless as well as leaving plaintiff with wet clothes to

wear after work because plaintiff had none to change into. Plaintiff became ill

enough to have to be transported to an outside facility, in addition to plaintiffs

oxygen saturation level diminishing to a dangerously low level. Defendant denied

plaintiff basic human necessities, causing plaintiff to become more susceptible to

becoming ill.

### (Parker-Kent)

59) On 2-14-11, plaintiff was having difficulty breathing. Plaintiff had a

physicians pass stating; that plaintiff should be allowed to go to the infirmary as

needed when short of breath (sob). The first time that plaintiff needed to go to the

infirmary on 2-14-10, Miss Berriman, a guard at OSP, seen plaintiff hunched

over gasping for air. Miss Berriman asked plaintiff if he was ok. Plaintiff said

"no". Plaintiff asked to be permitted to go to the infirmary. Plaintiff showed Miss

Berriman his "physicians pass". Miss Berriman went and spoke with Parker-Kent,

then Miss Berriman came and let plaintiff out of cell to go to the infirmary.

Before plaintiff went to the infirmary, Parker-Kent harassed plaintiff and said the

only reason plaintiff was going to the infirmary was because the plaintiff had a

"physicians pass". Later in the morning plaintiff was having difficulty breathing

again and was in fear for his life. Plaintiff asked Miss Berriman if plaintiff could

go get a breathing treatment. Miss Berriman said she had to inform Parker-Kent

of plaintiffs request. When Miss Berriman returned she said Parker-Kent denied

plaintiffs request. Defendant was deliberately indifferent to plaintiffs serious
medical need.

### (Jane Doe #7 and Jane Doe #8)

60) On 2-14-11, plaintiff attempted to go to the infirmary for a breathing
treatment, as plaintiff was having a difficult time breathing. Jane Doe #7 denied
plaintiffs request to have a breathing treatment after defendant knew that
plaintiffs oxygen saturation level was dangerously low. Defendant also refused to
allow plaintiff to be admitted to the infirmary for observation. Plaintiff was in
fear for his life. Jane Doe #8 refused to have plaintiff admitted to the infirmary
for observation after plaintiffs oxygen saturation level was dangerously low.
Defendants Jane Doe #7 and Jane Doe #8 were deliberately indifferent to
plaintiffs serious medical needs.

### (Daniel Dewsnup)

61) From around 11-1-10, until 6-1-11, Dewsnup, an infectious disease specialist
hired by the Oregon Department of Corrections (ODOC) to treat prisoners with
Hepatitis C, refused to give plaintiff medication for Hepatitis C, after plaintiff
informed defendant of plaintiffs serious medical need for medication because he
had 4th stage Hepatitis C. On June 1, 2011 plaintiff began the interferon and
ribavirin treatments to treat the Hepatitis C virus.

62) On 7-21-11, Dewsnup took plaintiff off of the medication Interferon and
Ribavirin that was used to treat Hepatitis C without trying to adjust the dosage.
Defendant said that plaintiff was having a psychiatric side effect due to the
medication. Plaintiff was not having a psychiatric side effect. Plaintiff was livid
as a result of retaliation by guards and medical personnel that plaintiff brings to
the courts attention under the claim totality of circumstances. Plaintiff suffers
from 4th stage Hepatitis C (cirrhosis of the liver). The medication was working
well on plaintiff. Defendant said "were playing with your life", after defendant
tried to convince plaintiff that the medication was not working. When defendant
realized that plaintiff knew that the medication was in fact working to lower the
viral load in plaintiffs blood, defendant then made the statement about playing
with plaintiffs life. Plaintiff became upset. Defendant then discontinued plaintiffs
medication. Defendant was and is deliberately indifferent to plaintiffs serious
medical needs. Defendant has caused plaintiff great harm both physically and
mentally. Defendant also retaliated on defendant for using the grievance
procedure.

63) On 1-13-12 plaintiff again met with Dewsnup. On this date Dewsnup tried to
convince plaintiff that he still had a 15 to 20 year life expectancy as a result of

looking at the results of the latest bloodwork that was performed on plaintiff.

That statement by Dewsnup is a blatant lie.

### (Totality of circumstances)

64) Plaintiff asks the court to allow the plaintiff to make a claim of an First,

Eighth, and Fourteenth Amendment violation against the following defendants:

Gore, Shasteen, R. Rogers, Phillippi, Garber, Mr.Foster, Harbaugh, Julie Story,

Dewsnup, Peterson, Yancey, Rose, Hale, J. Etter, Jane or John Doe, Sabrina,

Irene, Oberfoell, Smith, and Cruz. While one incident in itself does not give rise

to a civil rights violation, when the events for which plaintiff is making his

claims are looked at together in a vaccum, plaintiffs claim does give rise to an

First, Eighth and Fourteenth Amendment violation due to plaintiff being removed

from the medications interferon and ribavirin. Plaintiff voiced displeasure as a

result of the way guards and medical staff were treating him. Plaintiff was taken

off of the medication he was receiving in an attempt to prevent plaintiff from

dying a slow, painful, agonizing, yet preventable death, as a reult of plaintiff

reacting to these defendants actions and/or in-actions in regards to plaintiffs

claim. Plaintiff was subjected to retaliation by guards as well as medical

personnel for using the grievance procedure. Plaintiff was provoked, antagonized

and retaliated against in an attempt to get plaintiff to react to the mental and emotional abuse by guards and medical personnel.

## (Julie Story)

65) On 6-10-11, Julie Story made a false statement to another nurse about plaintiff. Plaintiffs medication was changed, however plaintiff was not receiving the prescribed dosage change for an extremely lengthy period of time. Defendant made a false statement to another person on the medical staff to create a conflict with plaintiff and medical personnel. Any kind of disagreement could cause plaintiff to be removed from the medication he was on needed to save plaintiffs life. Plaintiff was ultimately taken off of the medication as a result of several disagreements with defendant as well as other ODOC Personnel.

66) On 6-27-11 and 6-28-11, Julie Story brought medication that was crushed up outside of plaintiffs presence. Plaintiff could not identify the medication. Plaintiff asked defendant to bring medication that was not previously crushed up. Defendant refused to do so. Defendant denied plaintiff medication on 6-27-11 and 6-28-11. Defendant was very rude and unprofessional.

67) On 7-19-11, defendant brought medication to plaintiff, on this date defendant forgot to bring water so she could add water to the medication. Plaintiff had previously asked defendant not to add water to his medication due to the container for which she poured the water out of. The bottle was a propel flavored

water bottle that someone had finished the contents of, then tap water was added to the bottle. Defendant was adamant about adding water that she had brought with her each time. On 7-19-11, defendant forgot to bring water with her. Defendant asked plaintiff to retrieve water from his sink due to her "oversight". Plaintiff was not  willing to accommodate defendant.Therefore he wouldn't provide the water. Defendant said plaintiff refused his medication when plaintiff did not. Julie Story is related to a guard at the prison. Altercations with Julie Story caused other ODOC personnel to retaliate against plaintiff. In fact when plaintiff was released from segregation on 12-16-11, plaintiff began to be harassed by defendants husband who happens to be a guard at OSP. Plaintiff did not mail off original complaint until 12-21-11. After staff here at OSP realized plaintiff had filed a lawsuit, they as well as Julie  Story's husband's behavior had noticeably changed. Julie Story's husband leaned over in plaintiffs face to create conflict with plaintiff, before he was aware of the legal action plaintiff was taking against ODOC officials. Plaintiff said nothing to Julie Story's husband. Plaintiff promptly went and documented the incident.   Once defendants husband was made aware of the legal action taken by plaintiff he stopped trying to create conflict with plaintiff. Plaintiff brings this claim under totality of circumstances.

**(Travis Hays)**

68) From January of 2011 until June 22nd of 2011, Travis Hays tried to dissuade plaintiff from using the grievance and appeals process. Whenever plaintiff asked defendant for a grievance form or an appeals form, defendant would say things like "what do you need that for? " "It's not gonna do you no good." Defendant would laugh at plaintiff. Defendant would stand outside of plaintiffs cell and try to argue, antagonize and provoke plaintiff hoping plaintiff would give defendant a reason to write a disciplinary report on plaintiff. Until June 22nd, 2011, three days until defendant was due to be assigned to a different "post", plaintiff was successful in composing himself in a respectful manner. Once Defendant was assigned to a different "post", plaintiff would of hardly ever seen defendant. Defendant wrote a disciplinary report on plaintiff for "unauthorized area" for taking a shower after a softball game. Plaintiff was taken to segregation due to some things he said to defendant as a result of being harassed by Travis Hays. Defendant used retaliation tactics on plaintiff as well as harassed plaintiff for using the grievance process.

### (Corporal Harbaugh)

69) On 6-24-11 and 6-25-11, plaintiff was denied proper fitting shower shoes. Plaintiff almost fell in the shower as a result. Plaintiff submitted a grievance about this on Harbaugh as well as a John Doe. Plaintiff was retaliated against as a

result.Plaintiff was denied basic human necessities by defendant. Plaintiff brings totality of circumstances to the courts attention.

### (Yancey)

70) On 6-28-11 and around 7-13-11, Lieutenant Yancey placed illegal restrictions on plaintiff. Plaintiff was and is in fear for his life as a result of being beat by guards at SRCI as well as being retaliated on by rogue guards and medical personnel. Plaintiff was willing to meet with defendant at the cellfront for which plaintiff was "housed". Defendant wanted plaintiff to meet with him while plaintiff was in handcuffs while he and other guards were present. Plaintiff refused to do so for fear of being beat or falsely accused. Defendant imposed restrictions on plaintiff. Ultimately defendant came to the cellfront where plaintiff was housed to meet with plaintiff when defendant realized he was imposing illegal restrictions on plaintiff. Plaintiff was denied his legal property as well as any reading material or any other possessions other than hygiene items due to these restrictions. For twenty hours a day plaintiff was denied access to his legal property. These restrictions lasted for approximately one month. Plaintiff brings a retaliation claim against defendant. Plaintiff also brings a due process claim against defendant. Plaintiff brings totality of circumstanes to the courts attention.

### ( Mr. Foster)

71) On 6-28-11, Mr. Foster threatened plaintiff with bodily harm for plaintiffs

refusal to be escorted to an office to meet with an Security Threat Management

(STM) Lieutenant (Yancey). Plaintiff agreed to meet with Yancey at the front of

the cell for which he was housed. Plaintiff was in fear for his life due to being

previously beaten by guards at SRCI. Yancey refused to come to the cell plaintiff

was "housed in". Plaintiff brings this claim to the courts attention under totality

of circumstances.

### (Etter)

72) On 7-15-11, J. Etter was the lieutenant in charge of the Disciplinary

Segregation Unit (DSU). Before plaintiff was escorted to see Dr. Hansen,

plaintiff was handcuffed while in the cell plaintiff was "housed in", as per

protocol in DSU. When handcuffs were placed on plaintiff. Plaintiff advised Lt.

Etter that the cuffs were too tight before the cell door was opened. Plaintiff asked

that the cuffs be adjusted. Defendant or one of the guards escorting plaintiff said

they'd readjust the cuffs when they got to the end of the tier, about 60 yards away.

Plaintiff complained that the cuffs were hurting him. Defendant then said "I'm

tired of you". Plaintiff was in fear for his safety, due to plaintiff being assaulted

by SRCI guards in the past. Plaintiff thought he was gonna get slammed into the

ground by rouge guards. Plaintiff began to lower himself to the ground to prevent

guards from slamming him into the ground. Plaintiffs left wrist was cut due to the

cuffs being too tight. Plaintiffs arm was bruised as well. Plaintiff was angry as a result of the way he was treated, as well as upset due to the injuries he sustained. Plaintiff was immediately taken to see Dr. Hansen. As a result of plaintiff being angry at the way he had been treated by defendant and other guards that defendant was in charge of supervising, plaintiff yelled at Dr. Hansen, who made a recommendation to Dr. Dewsnup to remove plaintiff from the medication plaintiff was receiving for 4th stage Hepatitis C. Defendant didn't prevent guards from denying plaintiff food on several occasions. Plaintiff brought the issue to defendants attention several times. Plaintiff was subjected to cruel and unusual punishment, by way of excessive force, and retaliation as a result of defendants actions and/or inactions. Plaintiff asks the court to reconsider it's decision to dismiss the claims against Etter, defendant could of prevented the injuries to plaintiffs wrist and arm if plaintiff had readjusted the handcuffs before removing plaintiff from cell. There is video evidence to support plaintiffs claim. Plaintiff was on medication needed to prevent plaintiff from dying a very slow painful death. Defendant allowed other guards to retaliate against plaintiff knowing that plaintiff could be taken off of the medication that plaintiff was on if plaintiff acted aggressively as a result of the abuse he was subjected to. Plaintiff is adding the other guards to this complaint to support the retaliation claim. Defendant Etters actions and/or in-actions in culmination with the other guards actions rises

to the claim of retaliation, and excessive force. Plaintiff asks the court to allow the claim against Etter, as defendant lied to cover up his wrong doings in his response to plaintiffs grievance. Plaintiff has proof of the attempt to minimize the damage done to plaintiff as a result of allowing the handcuffs to remain on plaintiff too tight. There is video evidence to support plaintiffs claim. While plaintiff was on the ground, guards were pushing and pulling on plaintiffs limbs causing injury to plaintiff, hence the cut wrist and bruised arm. The guard holding the camera held the camera off of the abuse. Almost the whole tier of prisoners seen that the camera was held off of plaintiff while the abuse occurred. Prisoners repeatedly yelled to the guard holding the camera to point it on plaintiff to show the abuse plaintiff was forced to endure.   Plaintiff would not of had a confrontation with guards if defendant would of adjusted the handcuffs that caused injury to plaintiff prior to removing plaintiff from cell. Plaintiff is claiming physical injuries as well as mental and emotional anguish as a result of the abuse, and being taken off of the much needed medication that plaintiff was taking. In the honorable Judge Hernandez's order, on page 12 he states: "plaintiff alleges that he lowered himself to the ground to avoid what he believed would be an assault, causing the handcuffs to cut and bruise wrist". Plaintiffs attempt to lower himself to the ground did not cause the injury to plaintiff. The actions and/or in-actions of Etter as well as the guards that were pushing, pulling and

twisting plaintiffs limbs and body caused the injuries. The result of these physical injuries as well as emotional injuries due to plaintiff being taken off of the medication rises above the standard of *De Minimis* in regards to plaintiffs injuries. Defendant should of adjusted the handcuffs prior to removing plaintiff from cell to prevent an altercation as well as injury to plaintiff. However, Etter was looking for an altercation, hence the reason he did not fix or order other guards to readjust the cuffs prior to plaintiff being removed from cell from which plaintiff was "housed". Plaintiff introduces these claims to the court under totality of circumstances.

### (Peterson)

73) On 7-31-11, Plaintiff was missing food off of his breakfast tray. On this date another prisoner was also missing food off of his breakfast tray. When Peterson gave the other prisoner the food item that was not on his tray, defendant failed to give plaintiff the missing item. The intent to deprive was evident. Defendant again tried to make plaintiff upset so he could get a reaction out of plaintiff that would permit defendant to write a disciplinary report on plaintiff in an attempt to get sanctions imposed on plaintiff. Also, so medical personnel would continue to deny plaintiff the medications interferon and ribavirin. Peterson promptly gave the missing food item to the other prisoner within five minutes. Plaintiff was not given his missing food item for hours after he informed defendant that the item

was missing. Plaintiff was persistent and requested that he receive the food that he was being denied. The other guard on duty gave plaintiff three extra containers of ice cream later that day at the afternoon mealtime to make up for defendant denying plaintiff the missing food. This was after numerous attempts by plaintiff to get the missing food. Other prisoners also asked defendant why plaintiff was not receiving the food item absent from his tray. Defendant was attempting to make plaintiff upset to create a scenario to where he could write a disciplinary report on plaintiff to somehow justify medical personnel's willingness to continue to deny plaintiff the medications interferon and ribavirin.

74) On 8-6-11, Plaintiff informed Peterson that he was missing food items off of his tray. On this date defendant did not give plaintiff the missing food items. Defendant was again trying to create conflict by denying plaintiff food. He was using the denial of food as punishment for plaintiff using the grievance process.

75) On 8-7-11, Plaintiff was again missing food off of his tray. Plaintiff informed defendant that the tray he received was missing some food. Defendant gave plaintiff the missing food on this date. However when defendant gave plaintiff the food he stated, "quit crying like a baby". Defendant was again trying to create conflict. Plaintiff submitted numerous grievances on defendant as well as his co-workers and friends at OSP. Plaintiff makes a retaliation claim under totality of

circumstances. Plaintiff also makes the claim of denial of basic human necessities against defendant. Plaintiff brings totality of circumstances to the courts attention.

### (Hale)

76) On 8-17-11, Hale Brought the wrong tray to plaintiff for lunch. Plaintiff attempted to inform defendant of this discrepancy. Defendant ignored plaintiff. Defendant was trying to create a conflict with plaintiff for writing grievances on his co-workers. Defendant also knew that plaintiff was being denied the medications interferon and ribavirin. Defendant knew that if plaintiff showed any signs of aggression, plaintiff would continue to be denied the medication needed to prevent plaintiff form further suffering and possible death. Plaintiff did not eat lunch on 8-17-11 because defendant would not give plaintiff the food that plaintiff was supposed to receive. Plaintiff brings a retaliation claim on defendant. Plaintiff brings totality of circumstances to the courts attention.

### (Mrs. Reding)

77) On 9-22-11, Plaintiff was missing a food item off of his lunch tray. Plaintiff informed defendant that the tray he received was lacking an item. Defendant scooped the food from another tray onto plaintiffs tray with her hand. Her hand was gloved. However, defendant had handled keys, opened bars, doors, and done many other tasks while wearing the gloves that she used to scoop food onto plaintiffs tray without a utensil. Causing the glove to be soiled. Plaintiff was

constantly having problems with food items missing from his trays. Plaintiff makes a retaliation claim on defendant. Plaintiff brings totality of circumstances to the courts attention.

### (Jane or John Doe)

78) On 11-10-11, plaintiff received legal mail that was already opened outside plaintiffs presence. The mail was clearly marked legal mail. This incident would make it a total of four times plaintiff received legal mail that was opened outside of plaintiff's presence. Plaintiff brings a due process claim against defendant.

### (Oberfoell)

79) On 12-4-11, Oberfoell tried to deny plaintiff his medication. Defendant was present when the nurse brought plaintiff his medication. Upon Trey, a nurse at OSP, approaching the cell plaintiff was "housed in", plaintiff noticed that the medication Trey was attempting to give plaintiff was crushed. Plaintiff informed Trey that the medication was to be crushed up in front of plaintiff, after plaintiff was shown the medication in the package, so plaintiff would know what was being crushed. Plaintiff had submitted a previous grievance in regards to crushed up medication. Trey left and soon after returned with another pill that was already removed from the packaging. The pill was in a small cup and was broken

up. Plaintiff began to explain again that he was apprehensive about taking

medication that he wasn't sure of what it was. Defendant then took it upon

himself to get involved with plaintiffs medical business. Defendant began

walking away from the cell that plaintiff was "housed" in. Plaintiff had not been

given his medication. Defendant began calling Trey in an attempt to get Trey to

leave the area where plaintiff was "housed". Trey began to walk down the tier

away from where plaintiff was "housed". Plaintiff had to repeatedly call Trey in

an attempt to receive his medication. Trey returned with the broken up

medication. Plaintiff requested that Trey get medication that wasn't crushed up or

broken. Defendant then tried to get Trey to leave the front of cell once again

where plaintiff was "housed", without plaintiff receiving his medication. Plaintiff

had to take the pill that was previously removed from the package and broken up

outside his presence, even though this issue was, at least plaintiff thought it was

resolved through an earlier grievance submitted by plaintiff. Defendant was

looking for an altercation in an attempt to make plaintiff upset. Defendant knew

that if plaintiff received a disciplinary report that plaintiff would be denied the

medications interferon and ribavirin. Plaintiff needs these medications to prevent

plaintiff from dying a slow, painful death.Plaintiff submitted a grievance on

defendant. Defendant was retaliating on plaintiff for past altercations with DSU

guards, medical staff, his family member, and for the purpose of causing an

altercation for which he could submit a disciplinary report on plaintiff in an attempt to prevent plaintiff form receiving the medications interferon and ribavirin. Defendant was aware of plaintiff being removed form the interferon and ribavirin earlier in the year due to past altercations with DSU guards, medical staff, and his family member. Medical staff claim plaintiff had a psychriatric side effect from the medication. When in fact plaintiff did not have a psychiatric side effect. Plaintiff was angry at the guards in DSU over the way he had been continuously mistreated. Plaintiff voiced displeasure due to mental and physical abuse by guards. Each and every time plaintiff was seen by medical personnel while he was in Segregation there was a guard or two present listening to what the medical person said, violating HIPPA laws. Plaintiff asked numerous times for guards not to be present. Plaintiff was denied privacy each and every time. Defendant is a Sergeant at OSP. He is briefed by guards at OSP. So he was aware of plaintiffs medical situation.

80) On 12-9-11, defendant woke plaintiff up out of a sound sleep to ask plaintiff if plaintiff wanted to move to a cell that had a camera pointed at it 24 hours a day, 7 days a week. . Plaintiff refused, as plaintiff is and was not suicidal. Defendant knew that plaintiff had refused to be housed in a camera cell earlier that summer on more than one occasion. Defendant was again trying to create conflict with plaintiff. Plaintiff brings a retaliation claim against defendant. Plaintiff introduces

this claim before the court under totality of circumstances. Plaintiff claims mental anguish as a result of retaliation and being in fear for his life due to being denied medication.

### (Sabrina and Irene)

81) On 12-3-11, Sabrina and Irene were nurses in the infirmary.Plaintiff was in a segregation cell in the infirmary. Plaintiff was there to give stool samples. Plaintiff made several people aware that plaintiff had a stool sample ready to collect. These people informed defendants on several occasions. For two hours and forty minutes defendants did not collect the stool sample. The container with the stool sample did not have a lid. It was very unsanitary to have a stool sample uncovered in a cell where plaintiff was "housed". The smell was nauseating. Defendants were subjecting plaintiff to cruel and unusual punishment. Defendants were also attempting to get a reaction out of plaintiff that would allow the guard on duty to write a disciplinary report on plaintiff that would support the medical personnel's claim that plaintiff was "too aggressive for the interferon and ribavirin treatments. Plaintiff introduces these claims under totality of circumstances.

### (Smith)

82) During the week of 12-6-11 to 12-12-11, Smith aggressively grabbed plaintiffs shirt while plaintiff was in handcuffs. Defendant was attempting to lock

plaintiff in the shower. Plaintiff had not done anything to warrant defendant

locking plaintiff in the shower. Defendant was trying to illicit a response from

plaintiff that would enable him to write a disciplinary report on plaintiff in an

attempt to prevent plaintiff from receiving the medications interferon and

ribavirin. Plaintiff makes a retaliation claim on defendant. Plaintiff introduces

this claim under totality of circumstances.

### (Pries)

On 12-10-11, defendant tried to engage plaintiff in conversation to provoke

plaintiff. Defendant had no business speaking to plaintiff as he was not even the

guard assigned to the area of Segregation where plaintiff was "housed".

Defendant was assigned to a different housing unit when this occurred. Plaintiff

was seeking answers to questions from the guard assigned to the housing unit

where plaintiff was "housed". Plaintiff was not even talking to defendant.

Defendant tried to make plaintiff upset with inappropriate comments.

On 12-11-11, Defendant seen plaintiff exercising in plaintiffs cell. When

defendant walked by defendant made the comment "oh look, the special

olympics". Defendant did this to ridicule and antagonize plaintiff. Plaintiff makes

the claim of harassment and retaliation. Plaintiff brings these claims under

totality of circumstances.

### (Cruz)

83) On 1-13-12, Upon plaintiffs arrival to an exam room at the infirmary at OSP

he noticed the guards Witcraft and Cruz standing in the exam room. Plaintiff

aksed that the guards not be present while Dewsnup shared confidential

information with plaintiff. Dewsnup asked defendants to wait out at the "officers

desk" where another guard was present. When plaintiff left the exam room

plaintiff seen that defendants were waiting right around the corner outside the

door of the exam room. Defendants could hear every word that Dewsnup and

plaintiff said. Dewsnup was informing plaintiff of the TLC Committees decision

to continue to deny plaintiff the medications interferon and ribavirin. Dewsnup

stated that plaintiff could not have any disciplinary reports altercations or fights

for six months while being "housed in the general population of the prison"

before the TLC Committee would even reconsider placing plaintiff back on the

medications interferon and ribavirin.. Plaintiff submitted a grievance on Witcraft

and Cruz. Soon after plaintiff submitted the grievances, Cruz would ask plaintiff

how he was doing everytime he seen plaintiff. Even though plaintiff would

ignore him. Defendant had a mocking tone to his voice and would smile broadly

each time. Prior to plaintiff submitting grievance on Cruz defendant had never

said a word to plaintiff in regards to how plaintiff was doing. Defendant was

trying to get a response out of plaintiff that would enable defendant to write a

disciplinary report on plaintiff in an attempt to prevent plaintiff from receiving

medication needed to save plaintiffs life. Witcraft is not a defendant in this suit because he did not retaliate. Plaintiff makes a retaliation claim. Plaintiff introduces this claim under totality of circumstances.

### (Jason Hanson)

84) From April of 2011 until current, Jason Hanson is the Grievance Coordinator at OSP. Defendant has used illegal grievance practices by denying plaintiff the opportunity to submit grievances and grievance appeals. There are several instances where defendant has tried to dissuade plaintiff from using the grievance process. Defendant did not process grievances properly on at least three occasions. Defendant is also in charge of making sure grievances are answered by the person it is submitted on in a timely manner. Many grievances submitted by plaintiff have not been given back to plaintff in the time that is specified under the grievance rule and procedure policy that is expected to be exhausted before plaintiff can proceed with litigation.   Defendant is in violation of the due process rights of plaintiffs as a result.

### (Gore, Shasteen, R. Rogers,
### Phillippi, Garber)

85) On 12-30-11, plaintiff was attempting to obtain clothing. Plaintiff did not have the required or allowed amount in plaintiffs cell. Plaintiff informed Sergeant Gore, Sgt. Shasteen, Cpl. R. Rogers,Sgt. Phillippi, and  Sgt.Garber of this. If

plaintiffs clothing became wet over the  weekend plaintiff would be forced to wear wet clothing because defendants would not give plaintiff permission to get clothing. Nor would they allow plaintiff to speak to the OIC. Plaintiff became seriously ill last year after being forced to wear wet clothing after work because plaintiff was denied clothing by guards at OSP. When plaintiff asked for clothing from each defendant, plaintiff was denied clothing by these defendants. Plaintiff was given clothing the following day after being provoked by these defendants. Defendants were looking for an altercation with plaintiff. Any altercation with defendants would lead to a disciplinary report being written on plaintiff. If a disciplinary report was written on plaintiff it would prevent plaintiff from receiving the medications interferon  and ribavirin. For years there has been a problem with providing prisoners with adequate clothing even though there is a full laundry facility here at the prison. ODOC employees are concerned with making money rather than providing for prisoners what the law requires. ODOC employees have been given contracts with outside businesses to launder their dirty laundry. In order to fulfill these contracts, clothing needed to clothe prisoners are not being washed in a timely manner. Guards and their superiors blame prisoners for hoarding clothing. They use that as an excuse for the clothing shortage. Clothing for prisoners sit unlaundered waiting to be laundered while clothing for outside businesses are laundered. Plaintiff introduces these claims

under totality of circumstances. Plaintiff makes the claim of denial of basic

human necessities, and a due process violation against these defendants. Plaintiff

was denied his right of speaking with the Officer In Charge (OIC), per plaintiffs

request, to avoid problems. As well as give the OIC a chance to remedy the

clothing shortage issue. Defendants would not allow plaintiff to go up the chain

of command.

### (Premo)

86) Jeff  Premo is the Warden at OSP. Jeff Premo is aware that plaintiff is being

denied the medication needed to prevent plaintiff from further suffering and

death. Plaintiff has spoken with defendant about the medications interferon and

ribavirin. Defendant is also aware of what guards and medical personnel have

done to use retaliation tactics on plaintiff. Plaintiffs health continues to

deteriorate due to being denied medication. Plaintiff has written numerous

communication forms addressed to defendant in an attempt to communicate with

defendant. Defendant refuses to answer plaintiffs communication forms.

Defendant is/was aware of the clothing issue here at OSP. Defendant was a guard

here at the prison for many years before becoming the Warden.  Defendant is in

charge of all ODOC employees employed at OSP. Defendant allows plaintiff to

be denied medication. Defendant also allowed other defendants to use retaliation

tactics on plaintiff. Plaintifff alleges an Eighth amendment violation, cruel and unusual punishment, on defendant.

## (Therapeutic Level of Care Committee) (TLC)
## (Robert Snyder, Elizabeth Sazie, Michael Puerini,
## Bev Smith, Dewsnup and Shawn Elliot)

87) The following people mentioned were all members of the TLC Committee on 1-12-12: Daniel Dewsnup, Michael Puerini, Robert Snider, Bev Smith, Elizabeth Sazie, Shawn Elliot. This is the date that the TLC Committee agreed to delay plaintiffs medication to treat the Hepatitis C virus. On January 12, 2012 plaintiff was seen by Dr. Dewsnup to discuss being placed back on the Interferon, Ribavirin and Teleprivir medications used to combat the Hepatitis C virus. During plaintiffs visit with defendant, defendant informed plaintiff that he was gonna recommend that plaintiff be placed on the above mentioned medications. Defendant said that he had to get it approved by the Therapeutic Level Of Care Committee (TLC) , which was meeting later that day. Defendant was a member of the TLC Committee on January 12, 2012. The TLC Committee denied the medications on this date. The TLC Committee said that plaintiff needed to have six months clear conduct in the General Population of the prison before plaintiff would even be reconsidered for medication needed to prevent plaintiff from

dying a slow, painful, agonizing, yet preventable death, if plaintiff was given the medication he is being denied plaintiff would be given a chance to fight for his life.The TLC Committee is in essence saying "be a good boy and we might give you medication you need to live, even though guards and medical staff  retaliate, Do not receive any disciplinary reports or were gonna continue to let you suffer and die". Members of the TLC Committee, with the exception of Dr. Dewsnup, are not trained nor qualified  to make these decisions in regards to treating patients with Hepatitis C. They continue to allow plaintiffs health to deteriorate due to plaintiff being denied medication. The TLC Committee acted in unison. Therefore each member of the TLC Committee is responsible for the damage occurring to plaintiffs physical health, as well as mental health. Each day that passes, plaintiffs health deteriorates. Plaintiff makes an 8th Amedment claim against these defendants.These people are deliberately indifferent to plaintiffs serious medical needs,which results in plaintiff being subjected to cruel and unusual punishment. Plaintiff's health continues to deteriorate due to him being denied medication for Hepatitis C.

88) Plaintiff alleges a 1st and 8TH Amendment violation against; Vargo, Degner, Hansen, Shelton, Dewsnup, Randall, Parker-Kent, Jane Doe #6, Jane Doe #7, Jane Doe #8, Yancey, Cruz, Peterson, Mrs. Reding, Hale, Oberfoell, Sabrina, Irene, Smith, Freeman, Harris, Etter, Hays, Hanson, Premo, Michael Puerini,

Robert Snider, Bev Smith, Elizabeth Sazie, and Shawn Elliot. As a result of the actions and/or in-action by defendants, plaintiffs constitutional rights were violated. Plaintiff has been subjected to retaliation, deprived of medication needed to prevent suffering and deprived of adequate medication to alleviate pain, as well as suffering and irreparable damage to plaintiffs liver and deprived of basic human necessities. Defendants did this knowingly, intentionally and maliciously. Plaintiff attempted to resolve these issues through the grievance process as well as the Tort Claim Procedures, which were denied. It appears that OSP and ODOC officials choose litigation over reasoning. They violated plaintiffs rights under Administrative Rules, Oregon Laws and the State and Federal Constitutions. Damages are appropriate for these claims.

## VII. Requested Relief

89) Wherefore Plaintiff moves the court to grant the following relief:

90) Issue an Injunction declaring that each defendant individually and/or collectively violated plaintiffs Constitutional, Statutory, and Administrative Rights that are clearly established under the 1st, 8th, and 14th Amendments of the United States Constitution, Oregon Laws, and Oregon Department of Corrections Oregon Administrative Rules policies, and procedures;

88) Issue an Injunction against each defendant individually and/or collectively, declaring that they violated plaintiffs Constitutional, Statutory, and

Administrative Law Rights. Acting under color of State Law,in their official capacity, and as a result damages are to be awarded.

91) Issue an Preliminary Injunction against; Daniel Dewsnup, Dr. Degner, Ole Hansen, John Vargo, Steve Shelton or any other medical personnel at a prison where plaintiff may be "shipped", as plaintiffs life is in imminent danger. Plaintiff needs Interferon, Ribavirin and Incivek, teleprivir or any of the "new medications" now being used to destroy the Hepatitis C virus. Medications used to prevent further suffering as well as a slow, painful, agonizing, yet preventable, certain death. Without these medications plaintiff will suffer irreparable harm to his liver as well as possibly other organs as well. Plaintiff was on Interferon and Ribavirin. Those drugs were working on controlling plaintiffs deadly disease. Plaintiff was taken off of those medications as retaliation by the doctors here at OSP. Plaintiff prays that the court will intervene and save plaintiffs life. Plaintiff prays that the court will order Daniel Dewsnup, John Vargo, Ole Hansen, Degner, and Steve Shelton to give plaintiff the necessary medication needed to prevent plaintiff from passing away from a slow, painful, excruciating, agonizing death.

92) Plaintiff asks the court to reconsider the honorable Judge Hernandez's decision to deny issuing a Temporary Restraining Order against Doctors in suit; Dewsnup, Hansen, Vargo, Degner, and Shelton. If plaintiff does not receive the medication he was taken off of it's going to cost plaintiff his life. It is imperative

that a TRO is issued in this case. If plaintiff is transferred to another prison,

plaintiff asks the court to issue a Temporary Restraining Order on the doctors at

the prison that plaintiff is transferred to.

93) Issue an Injunction against each defendant individually and/or collectively,

and officially, declaring that Nominal, Compensatory, And Punitive Damages are

awarded as follows:

a) Nominal Damages of $1.00 against each defendant jointly and severally

found .liable for violating plaintiffs rights.

b) Compensatory Damages of $50,000.00 against Dr. Gulick, Nooth, Jane Doe

#1, and Mr. Franks, Randall, Shelton, Vargo, Degner, Dewsnup, Hansen,

Michael Puerini, Robert Snyder, Bev Smith, Elizabeth Sazie, and Shawn Elliot

jointly and severally found liable for violating plaintiffs rights.

c) Compensatory Damages of $30,000.00 against Hazen, Hanson, S.Palmer,

Estrada, S. Jennings, and Julie Story jointly and severally found liable for

violating plaintiffs rights.

d) Compensatory Damages in the amount of $75,000.00 against Payne, Jones,

and Premo jointly and severally for violating plaintiffs rights.

e) Compensatory Damages $10,000.00 against Jane Doe #4, Jane Doe #9,

John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5, John

Doe #6, John Doe #10, John Doe #11, Foster, Rose, Jane Doe #2, Jane Doe #3,

zPage 60 of 65    CIVIL RIGHTS COMPLAINT – U.S.C. 42 1983

Jane Doe #5, Jane Doe #6,  Pries, Gore, Shasteen, R.Rogers, Phillippi, and
Garber jointly and severally found liable for violating plaintiffs rights.

f) Compensatory Damages of $15,000.00 against Travis Hays, Freeman,
Parker-Kent, Harris, Etter, Jane Doe #7, Jane Doe #8, Yancey, Hale, Cruz,
Peterson, Mrs. Reding, Oberfoell, Sabrina, Irene, and Smith jointly and severally
found liable for violating plaintiffs rights.

Plaintiff asks the court to order defendants that are found guilty of any claims
plaintiff makes to pay punitive damages out of their personal account. Some
defendants in plaintiffs claim have made comments such as "so what sue me, it's
not coming out of my pocket". Perhaps if they had to pay out of their pocket
they'd think twice before performing their demeaning, torturous, sometimes
violent acts.

g)Punitive Damages of $10,000.00 against defendants; Pries, Phillippi, Garber,
Gore Shasteen, R. Rogers Rose, Harbaugh, Jane Doe #2, Jane Doe #9, John Doe
#11, John Doe #10.

h) Punitive Damages of $20,000.00 against defendants; Payne, Nooth, Jones,
Estrada, Cruz, Yancey, Peterson, Mrs. Reding, Hale, Oberfoell Sabrina, Irene,
Smith, S.Jennings,Garth Gulick, Jane Doe #1, Hazen, S. Palmer, Jane Doe #5,
Jane Doe #7, Jane Doe #8, John Doe #1, John Doe #2, John Doe #3, John Doe #4,
John Doe #5, Travis Hays, Freeman, Jason Hanson, Parker-Kent, Harris and Etter.

i) Punitive damages of $50,000.00 against defendants; Mr. Franks, Foster, Julie Story, John Doe #11 Randall, Shelton, Vargo, Degner, Dewsnup, Hansen, Michael Puerini, Robert Snyder, Bev Smith, Elizabeth Sazie, Shawn Elliot.

j) Punitive Damages of $100,000.00 against defendant Premo.

k) Issue an Injunction, permanently, against each defendant, individually and/or collectively, restraining them from retaliating against plaintiff for filing this complaint, and order that any such retaliation shall be construed as punishment, and contempt of court, punishable by a $2,000.00 fine against each defendant personally found to have retaliated against plaintiff, after a hearing before the court due to plaintiffs serious medical condition, which could disable plaintiff permanently or kill plaintiff.

l) Issue an Injunction that the court deems proper and just in this matter, using the courts jurisdiction and discretion.

m) Issue an Injunction retaining jurisdiction over this case, to hold a hearing in the event of retaliation, for contempt of Court proceedings.

Dated this 24 day of April , 2012

Shawn Michael Martin

SID# 13556240

2605 State ST.

Salem, OR 97310

Plaintiff, Pro-Se

Verification


I, Shawn Michael Martin, under oath, sworn to before a Notary swear that the

statements made in the attached civil rights complaint are true and correct to the

best of my knowledge and belief.


Dated the 24th day of April, 2012

Shawn Michael Martin
Shawn Michael Martin


**Sworn to before me on this 24th day of April, 20 12**

Audray M. Thomas
**Notary Public**
1/29/2016
**State of Oregon**

OFFICIAL SEAL
AUDRAY M THOMAS
NOTARY PUBLIC - OREGON
COMMISSION NO. 465328
MY COMMISSION EXPIRES JANUARY 29, 2016

CIVIL RIGHTS COMPLAINT – U.S.C. 42 1983